RATTET, PASTERNAK & GORDON-OLIVER, LLP     *Hearing Date: December 22, 2010*
Proposed Attorneys for the Debtor     *Hearing Time: 10:00 a.m.*
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.
Julie A. Cvek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

                                                             Chapter 11
ALLSTAR ELECTRIC CORP.,                    Case No. 10 B _____ RDD

                                   Debtor.
-------------------------------------------------------------------X

**DEBTOR'S MOTION (I) REQUESTING USE OF CASH COLLATERAL PURSUANT TO § 363(c)(2) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001, (II) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL ON AN EMERGENCY BASIS PENDING SUCH INTERIM HEARING, (III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF**

**TO: THE HONORABLE ROBERT D. DRAIN,**
      **UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtor and debtor-in-possession, AllStar Electric Corp. (the "Debtor"), by its attorneys, Rattet, Pasternak & Gordon-Oliver, LLP hereby submit this motion (the "Motion") for authority to, *inter alia*, use the cash collateral of Capital One, N.A. ("Capital One") on an interim and final basis. In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1

1. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are §§ 363(c)(2) and 361 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On December 17, 2010 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.

4. The Debtor has continued in possession of its business and management of its property pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. No trustee, examiner or creditors' committee has been heretofore appointed in this proceeding.

6. The Debtor is an electrical contractor that services industrial, institutional and residential customers providing electrical installation, trouble-shooting, and maintenance in addition to many other areas of electrical services.

## THE DEBTOR'S PRE-PETITION SECURED DEBT

7. On or about February 7, 2008, the Debtor executed a note (the "Note") and security agreement (the "Security Agreement") with North Fork Bank ("NFB") granting NFB a security interest in all of the Debtor's assets (the "Capital One Collateral"), which security interest was perfected by the filing of a UCC-1 financing statement. Since the execution of the Note and Security Agreement Capital One became the successor by merger to NFB. On or about

2

September 1, 2009, the Debtor executed a Restated Promissory Note (the "<u>Restated</u> <u>Note</u>") with Capital One permitting the Debtor to borrow up to an aggregate amount of $1,000,000. A copy of the Restated Note, certificate of merger, Security Agreement and UCC filing are annexed hereto as **Exhibit "A".**

8. As of November 2, 2010, Capital One asserts that the outstanding aggregate amounts owed by the Debtor is $1,049,673.61.

9. Prior to the Filing Date, Argonaut Insurance Company ("<u>Argo</u>"), as surety, issued on behalf of the Debtor, as principal, the following bonds in connection with contracts entered into by the Debtor (the "<u>Argo Bonded Contracts</u>"):

Bond No.: SUR0001355 (Performance & Payment)
Obligee: Somers Central School District & NYC Department of Environmental Protection
Project: Somers Intermediate School Waste Water Treatment Plant Regulatory Upgrade – Electrical Contract # SIS-B
Amount: $89,900

Bond No.; SUR0001356 (Performance & Payment)
Obligee: Rok-Built Construction, Inc.
Project: Electrical Work, Pleasantville High School – Additions & Alterations
Amount: $3,465,800

Bond No.: SUR0001357 (Performance & Payment)
Obligee: Yonkers Public Schools
Project: Electrical Alterations @ Patricia DiChiaro School PS 8, Yonkers, NY, Yonkers Public Schools Project #0B06
Amount: $201,000

Bond No.: SUR0001359 (Performance & Payment)
Obligee: Peekskill City School District
Project: Peekskill City School District Infrastructure Improvements @ Peekskill High School, Urlah Hill, Oakside, Hillcrest & Woodside Elementary Schools — Contract 2 – Electrical
Amount: $466,100

Bond No.: SUR0001360 (Performance & Payment)

Obligee: Minisink Valley Central School District
Project: Additions & Alterations, Minisink Valley Elementary/Intermediate, High School, Middle School, Bus Maintenance Facility; Project No. 08139-08001
Amount: $3,465,800

Bond No.: SUR0001361 (Performance & Payment)
Obligee: Vista Fire District No. 1, Its Commissioners & Officers
Project: Addition & Alterations @ Vista Fire District No. 1, 377 Smith Ridge Road, South Salem, NY – Contract #4 – Electric
Amount: $380,000

Bond No.: SUR0001362 (Fringe Benefits)
Obligee: International Brotherhood of Electrical Workers Local Union 363, the Trustees of the IBEW Local Union Welfare Fund, etc.
Term: July 10, 2009 to July 10, 2010
Amount: $200,000

Bond No.: SUR0001367 (Performance & Payment)
Obligee: State of New York
Project: Division of Military and Naval Affairs, CS-505, Barracks Rehab, Building No. 505, Camp Smith, Cortland Manor, New York, Project No. 43936B dated August 05, 2009 and Addendum No. 1 dated August 14, 2009, Addendum No. 2 dated September 02, 2009
Amount: $499,000

Bond No.: SUR0001368 (Performance & Payment)
Obligee: State of New York
Project: Division of Military and Naval Affairs, CS-504, Barracks Rehab, Building No. 504, Camp Smith, Cortland Manor, New York, Project No. 43935E dated August 05, 2009 and Addendum No. 1 dated August 14, 2009, Addendum No. 2 dated September 02, 2009
Amount: $508,800

10. All payments due or to become due to the Debtor under the Argo Bonded Contracts are subject to Article 3-A of the New York Lien Law (the "Argo Bonded Proceeds").

11. In or about June, 2010, and with the consent of Argo, the Debtor and Goldleaf Escrow LLC ("Goldleaf") entered into agreements (the "Goldleaf Agreements") pursuant to which the Debtor directed the obligees on Bond Nos. SUR0001360 (the "Minisink Bond"), SUR0001361 (the "Vista Bond"), SUR0001367 (the "Camp Smith 505 Bond"), and

SUR0001368 (the "Camp Smith 504 Bond") to make all payments due to the Debtor under its contract with the Debtor, and secured by Argo's bond, to Goldleaf, which held such payments in escrow and disbursed the proceeds thereof to pay for labor and materials provided to the Debtor in connection with its performance of the Argo Bonded Contracts. In the Goldleaf Agreements, the Debtor appointed Goldleaf as its attorney-in-fact for the purposes of the agreements, and the Debtor acknowledged that the agreements were undertaken for the special benefit of Argo and authorized Goldleaf to act in accordance with any instructions from Argo.

12. The work or other performance required of the Debtor under the contracts secured by the following bonds has not been completed: Bond No. SUR0001356 (the "Rok-Built Bond"), the Minisink Bond, the Vista Bond, the Camp Smith 505 Bond, and the Camp Smith 504 Bond (the "Uncompleted Argo Bonded Contracts"). The contract between the Debtor and the obligee secured by the Rok-Built Bond and the contract between the Debtor and the obligee secured by the Minisink Bond have been terminated by Debtor for (the "Terminated Argo Bonded Contracts"), and obligees on the Terminated Argo Bonded Contracts have made demand upon Argo, as surety, to complete the contracts pursuant to the performance bonds issued by Argo.

13. Prior to the Filing Date, Argo has paid amounts owed by the Debtor to certain subcontractors, material suppliers and union fringe benefits funds furnished in connection with the Debtor's performance of the Argo Bonded Contracts and reasonably anticipates that, in the future, it will be required to make additional such payments and to expend funds to complete the Uncompleted Argo Bonded Contracts.

14. In the event that Argo had exposure under the Bonds, the Debtor's repayment obligations are secured by liens and security interest in all of the Debtor's property and assets, wherever located and whether not owned or existing or hereafter acquired or arising by virtue of a Commercial Security Agreement or Agreements and UCC-1 Financing Statements, including those filed on or about May 26, 2010 (the "Argo Collateral"), a copy of which is annexed hereto as **Exhibit "B"**.

15. Lastly, commencing in or about February, 2008, the Debtor obtained a series of payment, performance and union fringe benefit bonds (the "FS Bonds") from First Sealord Surety Inc. ("First Sealord") in connection with several of the Debtor's projects.

16. In the event that First Sealord had exposure under the Bonds, the Debtor's repayment obligations are secured by liens and security interest in all of the Debtor's property and assets, wherever located and whether not owned or existing or hereafter acquired or arising by virtue of a Commercial Security Agreement or Agreements and UCC-1 Financing Statements, including those filed on or about May 26, 2010 (the "First Sealord Collateral") a copy of which is annexed hereto as **Exhibit "C"**.

## RELIEF REQUESTED AND BASIS FOR RELIEF

17. The Debtor submits this Motion for authority to use property which may constitute cash collateral in which Capital One, Argo and First Sealord may asserted a security interest in said cash collateral, substantially in accordance with the terms and conditions set forth in the proposed Stipulation and Order Authorizing Interim Use of Cash Collateral and Granting Adequate Protection (the "Stipulation") attached hereto as **Exhibit "D"**. The Debtor believes that Capital One, Argo and First Sealord are the only parties that have a perfected security

interest in the Debtor's property which may constitute Cash Collateral.

18. The proposed Stipulation grants the Debtor the authority to use cash collateral pursuant to §§363 (c)(1) and (2) of the Bankruptcy Code and Bankruptcy Rule 4001(c) to the extent necessary to continue the operation of its business and to preserve the value of its estate pending a final hearing.

19. § 363(a) of the Bankruptcy Code states as follows:

> "In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title."

20. § 363(c)(1) of the Bankruptcy Code provides as follows:

> "(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing".

21. § 363(d) of the Bankruptcy Code provides as follows:

> "(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(e), or 362(f) of this title".

22. Accordingly, pursuant to § 363(c)(2) of the Bankruptcy Code, the consent of Capital One, Argo and First Sealord, or authority from this Court is required to use cash collateral in which the Capital One, Argo and First Sealord holds a perfected, first priority security interest.

23. The purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained pre-bankruptcy. In re Swedeland Development Group, Inc., 16 F.3d 552 (3rd Cir. 1994); In re Dunes Casino Hotel, 69 B.R. 784, 793 (Bankr, D.N.J. 1986), citing In re Coors of the Cumberland, 19 B.R. 313 (Bankr. M.D. Tenn. 1982) See In re 495 Central Park Ave. Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992). Adequate protection is designed to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. In re Nice, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of the collateral").

24. Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987). In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1086); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Beker Industries Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also In re JKJ Chevrolet, Inc. 190 B.R. 542, 545 (Bankr. E.D.Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case).

25. The Stipulation provides that in addition to the existing rights and interests of Capital One, Argo and First Sealord and for the purpose of adequately protecting Capital One from Collateral Diminution[1], Capital One is hereby granted a replacement lien (the "Replacement Lien") in the Capital One Collateral, to the extent that the lien was valid, perfected and enforceable as of the Petition Date in the continuing order of priority of the Pre-Petition Lien

without determination herein as to the nature, extent and validity of said pre-petition liens and claims and to the extent Collateral Diminution occurs during the Chapter 11 case, subject to: (i) the claims of Chapter 11 professionals duly retained and to the extent awarded pursuant to §§ 330 or 331 of the Bankruptcy Code or pursuant to any monthly fee order entered in the Chapter 11 case; (ii) United States Trustee fees pursuant to 28 U.S.C. Section 1930 and 31 U.S.C. Section 3717; (iii) the payment of any claim of any subsequently appointed Chapter 7 Trustee to the extent of $20,000; and (iv) estate causes of action and the proceeds of any recoveries of estate causes of action under §§ 542 through 553 of the Bankruptcy Code.

26. In addition to the liens and security interests proposed to be granted pursuant hereto, As further adequate protection of Capital One's interests, the Debtor shall, commencing on January 20, 2011 make adequate protection payments in the form of turnover of the net cash proceeds on a monthly basis after payment of all expenses set forth in the Budget and payable by the twentieth (20th) day of each month, together with the monthly operating report for the previous month containing a cash disbursement report with an itemization of all receivables collected and expenses paid during the prior month.

27. The proposed adequate protection to Capital One is appropriate because it is designed to protect the Capital One against diminution in the value of Capital One's interest in the Cash Collateral. As such, under the terms and provisions of the Stipulation, Capital One's interest in the Cash Collateral is adequately protected.

28. The Debtor proposes to use the Cash Collateral only for ordinary and necessary operating expenses substantially in accordance with the operating budget annexed hereto as

---

[1] For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of the Secured Creditors' interests in Debtor's property as of the Filing Date by reason of Debtor's use of Cash Collateral in

**Exhibit "E"** (the "Budget").  The Debtor believes that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course of business for the period set forth in the Budget.  The Debtor believes that the use of cash collateral in accordance with the Budget will provide the Debtor with adequate liquidity to pay administrative expenses as they become due and payable during the period covered by the Budget.

## REQUEST FOR WAIVER OF STAY

29.The Debtor further seeks a waiver of the stay of the effectiveness of the Stipulation that may be imposed by any applicable Bankruptcy Rule.  As set forth above, the use of cash collateral is essential to prevent potentially irreparable damage to the Debtor's operations, value and ability to reorganize.  Accordingly, the Debtor submits that sufficient cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

## WAIVER OF MEMORANDUM OF LAW

30.The Debtor respectfully requests that the Court dispense with the requirement under Rule 9013-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York, of filing a Memorandum of Law in connection with this Motion, in that there are no novel or difficult legal issues presented in the Motion and the Motion includes citations to applicable authority.

## NOTICE

31.Notice of this Motion has been provided via overnight delivery, and electronic mail if possible, to (i) Office of the United States Trustee; (ii) counsel to Capital One, Argo and First

---

accordance with this Order.

Sealord; and (ii) the Debtor's 20 largest unsecured creditors. The Debtor submits that said notice is adequate and proper.

**WHEREFORE**, the Debtor respectfully requests the Court approve and authorize the Debtor's use of Cash Collateral pursuant to and in accordance with this Motion and the Stipulation, together with such other and further relief as is just and proper under the circumstances.

Dated: Harrison, New York
December 16, 2010

RATTET, PASTERNAK & GORDON-OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

By: */s/ Julie A. Cvek*_____
Julie A. Cvek